THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEFFREY DUBNOW, M.D.,      )
                                     )
                 Plaintiff,    )     No. 19 C 2423
                       v.            )
                                   )     Judge Virginia M. Kendall
ROBERT WILKIE, Secretary of Veterans   )
Affairs, U.S. Department of Veterans     )
Affairs                              )
                                   )
               Defendant.   )

## MEMORANDUM OPINION & ORDER

Plaintiff Dr. Jeffrey Dubnow, seeks review of the Final Order removing him from his federal service position as Chief of the Emergency Department at the Captain James A. Lovell Federal Health Care Center ("FHCC") in North Chicago, Illinois pursuant to 38 U.S.C. 7462(f)(1) and the Administrative Procedure Act, §§ 701–06. Dr. Dubnow claims the Department of Veterans Affairs ("VA") Principal Deputy Under Secretary of Health's ("PDUSH") reversal of the VA's Disciplinary Appeals Board's decision to overturn Dr. Dubnow's removal was arbitrary and capricious, an abuse of discretion, and not in accordance with the law. He further argues that the PDUSH's decision was not supported by substantial evidence and the PDUSH did not follow the proper procedures in reaching his decision. For the reasons discussed below, the Court affirms the VA's decision.

## BACKGROUND

Dr. Dubnow is a board-certified Emergency Medicine physician who has practiced since 1979. Dr. Dubnow was hired by the FHCC as the Chief of the Emergency Department in October 2011. Dr. Dubnow received positive performance reviews until his removal in April 2017. AR 101–04; 109–19, 124–35.

## I.     Events of April 2017

On April 29, 2017, Joseph Carney, the FHCC ED's Intermediate Care Technician ("ICT"),
answered a call made by ambulance staff through the VA Police Dispatch saying that a seven-
month-old baby was in cardiac arrest and was on its way in a Department of Defense ambulance.
AR 2138.  Dr. Dubnow's experience was that cardiac arrest in infants usually resulted from trauma.
*Id.*  Because the FHCC is not equipped to handle trauma, Dr. Dubnow told ICT Carney to direct
the ambulance to Lake Forest Hospital instead.  *Id.*; AR 2143.  Dr. Dubnow later testified that he
believed this to be in the interest of the patient.  AR2138.  Neither Dr. Dubnow nor ICT Carney
were told that the ambulance was already on FHCC property.  *Id.*  After the phone call ended, staff
realized the ambulance was already in the ambulance bay and started preparing to accept the
patient and begin treatment.  *Id.*; AR 721.  However, the ambulance did not stop, and the patient
died *en route* to Lake Forest Hospital.  AR 918–19, 1060, 2138. The VA convened an
Administrative Investigative Board ("AIB") to investigate.  AR 904–09.  On December 18, 2017,
following the investigation, FHCC Director Dr. Stephen Holt issued the documents titled Removal
and Revocation of Privileges to Dr. Dubnow.  AR 838–40, 909.

## II.     Dr. Dubnow's Appeal to the DAB

After his removal, Dr. Dubnow appealed to the Disciplinary Appeals Board ("DAB" or
"the Board") under 38 U.S.C. § 7461.  Dkt. 1-1 at 19; AR 2142.  On January 18, 2018 (amended
February 12, 2018), the Deputy Under Secretary for Health for Operations and Management for
the Department of Veterans Affairs appointed a DAB to consider the appeal.  AR 2142, 2182.  In
May 2018, the DAB decided to overturn Dr. Dubnow's removal.  AR 2176.  The DAB noted
procedural irregularities in the AIB's investigation that Dr. Holt relied upon, including the AIB's

failure to interview the EMS ambulance first responders, ICT Carney, and Dr. Martin, who was an eyewitness to the ambulance refusal. AR 2145–46. The DAB found Charge 1, "Inappropriate Refusal of Care and/or Diversion," Charge 4, "Failure to Provide Oversight," and Charge 5, "Failure to Meet Standard of Care," were also not sustained in whole or in part. AR 2151, 2161–66. The DAB also overturned Charge 2, "Failure to Follow JPI No. 11-2013-28," and Charge 3, "Failure to Follow VHA Directive 1101.05(2)," finding that Dr. Dubnow did not violate either section. AR 2154–60.

### III.    The PDUSH's Remand to the DAB and Final Decision

The Board sent its findings to Steven Lieberman, the VA's Principal Deputy Under Secretary of Health ("PDUSH"), who has the final reviewing authority within the VA. AR 2137; 38 U.S.C § 7462(d)(2)(A). The PDUSH remanded the case to the DAB, asking for further analysis as to its conclusion "that the diversion of the patient was acceptable, focusing on the fact that a fully trained, Board Certified ER physician should have been able to provide care to an infant." AR 2169. The PDUSH also sought additional analysis of the DAB's conclusion that "it was acceptable for the Appellant to assume the cardiac arrest was trauma related, and why an assessment on the patient was not warranted before reaching that conclusion." *Id.* The DAB found that Charge 1 was not sustained because the Agency did not challenge either Dr. Dubnow or Dr. Martin's assumptions regarding trauma and because the removal letter did not mention anything about a lack of hands-on analysis of the patient. AR 2172. Additionally, the DAB found that neither Dr. Dubnow nor ICT Carney were told the ambulance was already on hospital property. AR 2173. The DAB found that it did not know what portion of the JPI No. 11-2013-28 Dr. Dubnow violated, that every witness testified the ambulance never arrived and the patient was not literally turned away, and that Dr. Dubnow used his clinical judgment to re-direct the ambulance.

3

AR 2173. Charge 3 was also not sustained because the specification did not identify which portion of the policy Dr. Dubnow violated and because the witnesses testified the ambulance never arrived. AR 2174. Charges 4 and 5 were also not sustained. *Id.* The DAB concluded that "the Board did not sustain any of the charges by preponderant evidence. ED physicians have been given the authority to make case-by-case decisions on ambulance diversion. There was no evidence or testimony provided to show the decision to redirect the ambulance was inappropriate or a violation of any policy or directive." *Id.*

In December 2018, after receiving the DAB's additional analysis, the PDUSH rejected the DAB's decision. AR 2182–83. Pursuant to 38 U.S.C § 7462(d)(2)(A), "[i]f the Secretary finds a decision of the board to be clearly contrary to the evidence . . . the Secretary may . . . reverse the decision of the board." The PDUSH stated he did not concur with the DAB's finding regarding Charge 1, "as it is clearly contrary to the evidence." AR 2182. The PDUSH found that the FHCC

> [N]ot only serves Veterans but also family members housed at the military base. As such, the FHCC is staffed and equipped to handle pediatric cases, and equipment necessary to handle a pediatric resuscitation was available. Additionally, you and other staff members on duty that day were Pediatric Advanced Life Support (PALS) certified, and as such, there was no need to divert the ambulance to another facility. The evidence shows your decision to divert the ambulance was not justified, and created a serious situation that negatively impacted patient care.

*Id.* The PDUSH found that "the egregiousness of the conduct as described in Charge 1 justifies the penalty of removal given the circumstances of this case." AR 2183. Dr. Dubnow then sought review of the PDUSH's final decision in this Court.

## **LEGAL STANDARD**

Under 38 U.S.C. § 7462(f)(1), a VA employee appointed under 38 U.S.C. § 7401(1) may appeal to a district court a DAB decision:

In any case in which judicial review is sought under this subsection, the court shall review the record and hold unlawful and set aside any agency action, finding, or conclusion found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) obtained without procedures required by law, rule, or regulation having been followed; or
(C) unsupported by substantial evidence.

38 U.S.C. § 7462(f)(2). "The Court's review under this section 'directly mirrors the standards for judicial review of other administrative actions.'" *See e.g. Martin v. Dep't of Veterans Affairs*, 5:16-cv-05562, 2017 WL 3841895, *3 (S.D. W.Va. Sept. 1, 2017) (citing *Beck v. Shinseki*, No. CV 113-126, 2015 WL 1202196, at *11 (S.D. Ga. Mar. 16, 2015) (internal citations omitted); *see also Pocha v. McDonald*, No. CV 15-475, 2016 WL 916417, at *4 (D. Minn. Mar. 10, 2016) (stating the standard under 38 U.S.C. § 7462(f)(2) "mirrors the standards for judicial review of other administrative actions, and analogous administrative law precedents are applicable").

An agency's decision is considered arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Lerner v. Shinseki*, No. 3:12-CV-00565, 2013 WL 5592906, at *5 (W.D. Ky. Oct. 10, 2013) (citing *Taylor v. Principi*, 92 Fed. Appx. 274, 276–77 (6th Cir. 2004)). "The arbitrary and capricious standard is a highly deferential standard which presumes the validity of the agency's action ... Ultimately, the court's review of the administrative record is intended to inform it of the propriety of the agency's decision, not to enable the court to make its own decision...." *Martin*, 2017 WL 3841895 at *3 (citing *W. Virginia Dep't of Health & Human Res.*

5

*v. Sebelius*, 172 F. Supp. 3d 904, 914 (S.D. W.Va. 2016) (internal citations omitted)). Additionally, an agency's decision may be overturned if it is unsupported by substantial evidence. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966); *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment'" for that of the Secretary. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). However, if supported by substantial evidence, the decision will be upheld even if conflicting evidence exists or another outcome could be supported by the evidence. *See Consolo*, 383 U.S. at 620; *see also Scheck v. Barnhart,* 357 F.3d 697, 699 (7th Cir. 2004).

## DISCUSSION

Dr. Dubnow seeks review stating that the PDUSH's review was arbitrary and capricious, an abuse of discretion, and not in accordance with the law. He further argues that the PDUSH's decision was not supported by substantial evidence and was obtained without procedures required by law, rule, or regulation having been followed.

### I.    Arbitrary and Capricious

Under 38 U.S.C. §7462(f)(2)(A), a court should find an agency's decision is "arbitrary and capricious" if the agency relied on factors Congress did not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a

difference in view or the product of agency expertise. Arbitrary and capricious review is "highly deferential" and an administrative decision should be upheld "'as long as the agency's path may be reasonably discerned.'" *Sierra Club v. U.S. Environmental Protection Agency*, 774 F.3d 383, 393 (7th Cir. 2014) (citing *Mt. Sinai Hosp. Med. Ctr. v. Shalala*, 196 F.3d 703, 708 (7th Cir.1999)). Review under the arbitrary and capricious standard is principally concerned with ensuring the Agency examined the relevant data and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made, the Agency's decision was based on a consideration of the relevant factors, and the Agency made no clear error of judgment. *Id.* (citing *Bluewater Network v. EPA*, 370 F.3d 1, 11 (D.C. Cir. 2004)). Dr. Dubnow seeks to relitigate the issues and urges the Court to reconsider the evidence that was properly before the DAB and PDUSH. The Court is not to re-weigh the evidence. *See Awad v. U.S. Dep't of State*, 19 C 10, 2020 WL 1182743, *4 (N.D. Ill. Mar. 12, 2020) (Kendall, J.) The PDUSH, in looking at the evidence before him and the DAB's decision, found that Dr. Dubnow's decision to divert the ambulance was unjustified as he and other staff members were capable of taking care of the patient. Dr. Dubnow does not dispute he could have cared for the infant but argues his decision was nonetheless justified. Again, whether Dr. Dubnow was justified is not for the Court to resolve. The only task is to find whether there was a rational basis for PDUSH's ruling and that there was no clear error in judgment. The PDUSH was certainly brief in his fact-finding, but in weighing the evidence before him, found Dr. Dubnow and the other FHCC staff could have and should have taken care of the patient. The PDUSH supported its decision by noting that Dr. Dubnow was trained in pediatric care and the hospital frequently cares for families. Therefore, the PDUSH determined that the DAB's decision was contrary to the evidence. Simply because the PDUSH was brief is not grounds to find his decision arbitrary or capricious. The PDUSH "need not address

every piece of evidence in the record but must 'build an accurate and logical bridge from the evidence to the conclusion.'" *Richards v. Astrue*, 370 Fed. Appx. 727, 730 (7th Cir. 2010) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). That the PDUSH reached an outcome different than the DAB does not make the decision arbitrary and capricious when supported by a rational basis.

Evidence shows that Dr. Dubnow and his staff were capable of caring for the patient, especially given that the FHCC serves not only veterans but military families. While it appears that a tragic series of miscommunications and misjudgments occurred leading the ambulance to drive away, the PDUSH's basis for its decision rests on Dr. Dubnow's initial decision to tell the ambulance they could not treat the infant when they could have and to redirect it. The PDUSH's pathway to its decision can be reasonably discerned and the Court is not to second-guess its outcome where there is a rational basis provided. *Sierra Club*, 774 F.3d at 393.

## II.    Abuse of Discretion and Not in Accordance with the Law

Dr. Dubnow claims that the PDUSH's decision was an abuse of discretion and not in accordance with the law. Dr. Dubnow's argument is premised on the PDUSH's statement that the DAB's findings as to Charge 1 were "clearly contrary to the evidence," his assessment that the decision "is clearly based on a new accusation, not contained in the FHCC's removal letter," and his belief that the PDUSH failed to consider evidence helpful to his case. (Dkt. 42 at 18–19).

Dr. Dubnow asks the Court to exceed its role by relitigating aspects of his case. Although Dr. Dubnow advances his abuse of discretion arguments extensively under separate headings, the Court's review under an abuse of discretion is the same as in arbitrary and capricious review. The scope of review is "narrow," and the Court determines only whether the agency examined "the relevant data" and articulated "a satisfactory explanation" for its decision, "including a rational

connection between the facts found and the choice made." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019) (citing *Motor Vehicle Mfrs. Assn. of U. S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted). The Court may not substitute its judgment for that of the agency but must confine itself to ensuring that the agency remained "within the bounds of reasoned decision making," *Id.* (citing *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 105 (1983)).

The PDUSH reviewed the evidence and articulated a satisfactory, albeit brief, reason for his decision based on undisputed evidence. Simply because the DAB provided a more fulsome reason does not render the PDUSH's decision an abuse of discretion. The parties agree evidence existed that Dr. Dubnow and other FHCC staff were equipped and capable of accommodating the patient. Dr. Dubnow testified to this himself. AR 2151, 2172. There is certainly a rational basis for the PDUSH's decision. The PDUSH has the statutory authority to review and disagree with the DAB's decision and it was not an abuse of discretion for him to do so. In fact, the PDUSH asked the DAB for additional analysis as to what he saw as the key factor here—whether Dr. Dubnow and his staff were capable of treating the patient.

Dr. Dubnow writes that the PDUSH considered a new accusation that was not considered in the FHCC's removal letter. He does not clarify what the new accusation is, nor does he cite how this constitutes an abuse of discretion. In its follow-up analysis to PDUSH, the DAB stated they did not consider a lack of hands-on analysis of the patient because it was not addressed in the initial removal letter. AR 2172. However, the PDUSH's reasoning is not based on the lack of hands-on analysis of the patient. The PDUSH justified his decision because the FHCC was capable of handling pediatric cases, it had the necessary equipment to handle a pediatric resuscitation, and Dr. Dubnow and other staff were certified in pediatric advanced life support. AR 2182. All of

9

these are undisputed facts.  AR 2152, 2172.  Simply because the PDUSH weighed the evidence differently than the DAB does not constitute an abuse of discretion.

Next, Dr. Dubnow argues that the PDUSH's decision was not in accordance with the law because he believes the PDUSH's firing was a reprisal for his whistleblowing activities.  Dr. Dubnow writes, "under the Whistleblower Protection Enhancement Act, when a federal employee shows that protected activity, such as disclosing violations, was a contributing factor in an adverse action, the agency cannot thereafter prevail unless it proves that it would have taken the same adverse action by clear and convincing evidence."  (Dkt. 42 at 22, citing 5 U.S.C. §2302(b)(8), (9)),  First, if Dr. Dubnow would like to file a retaliation claim, he must file a whistleblower complaint with the Office of Special Counsel ("OSC"), the federal office charged with investigating allegations that an agency violated the Whistleblower Protection Act by retaliating against its employee for, as relevant here, disclosing "any violation of law, rule, or regulation." *Delgado v. Merit Systems Protection Board*, 880 F.3d 913, 915 (7th Cir. 2018) (citing 5 U.S.C. §§ 1214(a)(1)(A)).  Dr. Dubnow has not, and so his retaliation claim under this statute's protections is not subject to this Court's review.

The Court notes there is simply no evidence that the PDUSH took Dr. Dubnow's whistleblower status into consideration.  The DAB briefly discussed Dr. Dubnow's whistleblower status and indicated the removal demands could have come from individuals in the Navy, VISN 12, or even the VACO.  AR 2148.  However, contrary to Dr. Dubnow's suggestion, the DAB does not link the potential removal demands to his whistleblower status.  *Id*.  In fact, at the end of its decision, "[t]he DAB notes that the Appellant had been afforded Whistleblower status by the VA prior to his removal and that his status as a whistleblower had been inadvertently leaked to top leadership at FHCC.  The Board was not presented with any evidence that linked his removal to

10

his status as a whistleblower." AR 2166. Should Dr. Dubnow wish to pursue his retaliation claim, he may file a complaint with the Special Counsel. §§ 1214(a)(1)(A).

### III.    Substantial Evidence

Dr. Dubnow next argues that the PDUSH's decision was not supported by substantial evidence. A court will not disturb an agency's decision as long as it is supported by substantial evidence—that is, if the decision is based on evidence that "a reasonable mind might accept as adequate to support the conclusion." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). A decision supported by substantial evidence "will be upheld even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Dr. Dubnow asserts without support that the "Court's review of the PDUSH's decision, must take into account that the only situation that permits the PDUSH to reverse the DAB decision is if the DAB decision is 'clearly contrary to the evidence or unlawful.'" (Dkt. 42 at 25). Dr. Dubnow arguments are largely repetitive of his prior arguments. As discussed by the Court above, the PDUSH's decision was supported by substantial, undisputed evidence that Dr. Dubnow and his staff could have treated the patient but diverted the ambulance regardless, which the PDUSH clearly found unacceptable. Therefore, the PDUSH found the DAB's decision to be clearly contrary to the evidence. Perhaps the DAB was persuaded by evidence that Dr. Dubnow was justified in his reasoning, but that is not for the Court to determine. Reasonable minds can, and clearly did, disagree over the validity of the PDUSH's decision, but the Court cannot say that it was unsupported by substantial evidence.

### IV.    Procedures Required by Law, Rule, or Regulation

Finally, Dr. Dubnow makes a convoluted and unsupported argument that the "PDUSH violated Dr. Dubnow's due process by exceeding the scope of the agency's charge…in making his

11

decision based on the new accusation raised for the first time in the PDUSH's decision letter that Dr. Dubnow, 'created a serious situation that negatively impacted patient care,' which is language not included anywhere in Charge 1 in this matter." (Dkt. 42 at 31–32). The "new accusation" identified by Dr. Dubnow is rooted in a semantic difference between the VA's initial removal letter and the PDUSH's ultimate removal of Dr. Dubnow. *Compare* AR 838 (charging Dr. Dubnow with having "inappropriately refused care to and/or diverted . . . [an] ambulance . . . which delayed potentially life-saving treatment") *with* AR 2182 determining Dr. Dubnow's decision to "divert the ambulance was not justified, and created a serious situation that negatively impacted patient care").

It is true that "when an agency disciplines an employee, it may do so based only on the charges in the notice of proposed action." *Do v. Dep't of Hous. & Urban Dev*., 913 F.3d 1089, 1094 (Fed. Cir. 2019). Dr. Dubnow attempts to split hairs in order to claim that he did not receive proper notice based on the slight difference in wording. Such an argument is difficult to take seriously, which perhaps Dr. Dubnow acknowledges since the argument does not appear in his reply brief. There is a slight difference between the language of the charge letter and the PDUSH letter but the charges are identical in substance. Dr. Dubnow was charged with delaying potentially life-saving treatment. This is clearly a serious situation in that an infant died as a result. The charges were not different in any fundamental way so as to deprive Dr. Dubnow of due process.

In any event, "the due process clause is flexible and requires only 'such procedural protections as the particular situation demands.'" *Riano v. McDonald*, 833 F.3d 830, 834 (7th Cir. 2016) (citing *Ringquist v. Hampton*, 582 F.2d 1138, 1140 (7th Cir. 1978)). To determine whether an agency's procedures failed to meet the constitutional minimum, courts balance three factors: "'first, the private interest that was affected by the official action; second, the risk of erroneous

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Id.* (quoting *Mann v. Vogel*, 707 F.3d 872, 879 (7th Cir. 2013)). Dr. Dubnow asserts the slight change in wording deprived him of due process because the "new charge completely alters what was investigated, reviewed, and presented as evidence" but fails to specify a single alteration. (Dkt. 42 at 33). Without specifying what possible issue was not investigated or reviewed, the Court is left to speculate as to what that could be and cannot conjure any such issue based on the record. There was no due process violation.

## CONCLUSION

Because the PDUSH's decision to reverse the DAB and remove Dr. Dubnow was not arbitrary and capricious, an abuse of discretion, followed proper procedures, was supported by substantial evidence, and in accordance with the law, the Court affirms the VA's decision.

Virginia M. Kendall
United States District Judge

Date: November 12, 2020

13